IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARIA THERESA NUNEZ, Individually and | § | |
| on Behalf of the Estate of Ignacio Nunez, and | § | |
| ELIZABETH REYTHER, as next friend of | § | |
| JARED NUNEZ, a Minor, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 4:06-CV-0579-BE |
| V. | § | |
| | § | |
| BRAD DEVINEY, DAVID OCHOA, and | § | |
| CITY OF SANSOM PARK, TEXAS, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment [doc. 29], filed on

May 31, 2007.  Having reviewed the arguments of the parties and the summary judgment evidence

submitted, the court finds it appropriate to grant the motion with respect to Plaintiffs' federal claims

and remand Plaintiffs' state law claims for wrongful death to the state courts for determination.

## A.    HISTORY[1]

Defendants Brad Deviney and  David Ochoa were police officers employed by the Sansom

Park Police Department in 2004.  At approximately 8:30 p.m. on July 19, 2004, Ignacio Nunez was

detained by Deviney and another police officer, Parker Mitchell, for public intoxication.  When

asked for his name and identification, Nunez gave the officers an alias.

Deviney transported Nunez to the Sansom Park City Jail for booking at approximately 9:00

p.m.  On arrival, Deviney began the booking process.  Because Nunez denied being able to speak

English, Deviney asked Ochoa to assist with the process and translate.  Nunez became irritated and

---

[1]  The facts are taken from the Statements of Material Facts and evidence submitted by the parties, and for
present purposes, all areas of disagreement are indulged in favor of the plaintiffs.

combative with the officers, and was placed in a cell at approximately 9:30 p.m. to give him the opportunity to calm down before the booking process was completed.  Deviney removed personal items from Nunez's pockets before he was placed in the cell, but did not remove Nunez's shoes or shoelaces.  No one monitored or checked on Nunez until shortly before 6:00 a.m. on July 20, 2004, when Ochoa found Nunez had strangled himself by tying his shoelaces to the top bunk bed and placing the loop around his neck.  Ochoa called an ambulance service, which arrived at the jail at 6:02 a.m.  The medical examiner ruled that the cause of death was suicide by hanging.

Nunez's mother and girlfriend, as the mother of Nunez's minor child, filed suit in the 141st District Court of Tarrant County, Texas, against the police officers and the City for civil rights violations and also alleged state law claims for wrongful death.  *See* 42 U.S.C § 1983; Tex. Civ. Prac. & Rem. Code Ann. § 71.001 et seq. (Vernon 1997).   The defendants removed the action to this court on the basis of federal question jurisdiction, with supplemental jurisdiction over the state law claims. The defendants now move for summary judgment on the ground that the plaintiffs cannot prove their causes of action and/or because the defendants are entitled to immunity.

**B.      STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).   The Court views all the evidence and inferences in the light most favorable to the nonmovant.  *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993).

The movant bears the initial burden of showing that no genuine issue of material fact exists, but once the movant makes such a showing, the burden shifts to the nonmovant to produce competent summary judgment evidence of the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514, 91 L.Ed.2d 202.   An issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmovant. *Id.* at 248, 106 S.Ct. at 2514.   A fact is material if its resolution would affect the outcome of the suit under the governing law. *Id.*

## C.     DISCUSSION

1.      42 U.S.C. § 1983

Section 1983 provides that any person who, under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured. 42 U.S.C. § 1983.   Section 1983 does not create substantive rights, but only provides a remedy for the rights that it designates. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

Nunez's family complains of the police officers' failure to complete the booking process, remove Nunez's personal property, and monitor him after he was placed in a cell, and assert that the officers' conduct constituted punishment of a pretrial detainee in violation of due process guarantees.   The failure to provide pretrial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as punishment in violation of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1966)(en banc); *Rhyne v. Henderson County*, 973 F.2d 386, 391-392 (5th Cir. 1992).

The appropriate standards for analyzing the violation of a pretrial detainee's constitutional rights depend on whether the complaint is an attack on conditions of confinement or concerns an

episodic act or omission by the jail personnel.  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)(en banc).  In true jail condition cases, the perpetrator's state of mind is not at issue, and the State's intent is apparent in the form of the challenged condition, practice, rule, or restriction.  *See Hare*, 74 F.3d at 644-45.  An episodic-act-or-omission case usually involves an actor interposed between the detainee and the municipality, such that the detainee complains first of some act or omission by the individual, then points to a policy, custom, or rule (or lack thereof) that permitted or caused the violation.  *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997); *Scott*, 114 F.3d at 53. A review of the plaintiffs' complaint demonstrates that this case involves allegations of an episodic act or omission by the named officers.

The episodic act or omission of a jail official does not violate a pretrial detainee's due process right to medical care or protection from suicidal tendencies unless the official acted with subjective deliberate indifference to the detainee's rights.  *Hare*, 74 F.3d at 636, 647-48.  For an official to act with deliberate indifference, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must draw that inference.  *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).   An official's failure to alleviate a significant risk that he should have perceived but did not, while not commendable, does not rise to the level of deliberate indifference.  *See Farmer*, 511 U.S. at 838, 114 S.Ct. at 1979; *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002).  The state actor's actual knowledge is critical to the inquiry.  *Posey v. Southwestern Bell Tel. L.P.*, 430 F. Supp. 2d 616, 622 (N.D. Tex. 2006).  A negligent, or even grossly negligent, response to a substantial risk of serious harm is not sufficient.  *Thompson*, 245 F.3d at 459; *Hare*, 74 F.3d at 645.

4

Nunez was intoxicated and was combative with the officers, but this conduct does not, in and of itself, alert the officers that Nunez was a suicide risk. *See Posey*, 430 F. Supp. 2d at 623 (finding hostility and belligerence of detainee insufficient to establish jail personnel were deliberately indifferent to whether detainee was a suicide risk). Although Nunez fought with the officers, there is no evidence that he stated or indicated to them that he was depressed or was contemplating harming himself while in custody.[2] *Cf. Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993)(noting that police personnel are not require to "unerringly detect suicidal tendencies"); *Burns v. City of Galveston*, 905 F.2d 100, 104 (5th Cir. 1990)(finding no constitutional requirement that municipalities train officers to medically screen every pretrial detainee for latent, as opposed to known, suicidal tendencies).

Nunez's family argues that it is common knowledge that some pretrial detainees are depressed and suicidal, thus the officers must have known of a substantial risk of suicide if Nunez's shoes and/or shoelaces were not removed and he was placed in an unmonitored cell. Under exceptional circumstances, an official's knowledge of a substantial risk of harm may be inferred from the sheer obviousness of the risk. *See Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmers*, 511 U.S. at 842-43 & n.8, 114 S.Ct at 1981-82 & n.8). But the concept that pretrial detainees are commonly depressed when incarcerated is a generality that does not suffice as the kind of exceptional circumstance or obvious risk that would support an inference that defendants knew of a substantial risk of harm to Nunez. *See Johnson v. Johnson County*, 2006 WL 1722570, *11 (N.D. Tex. June 21, 2006)(rejecting contention that undifferentiated knowledge that pretrial

---

[2] The record indicates that Nunez had a history of mental health treatment; however, he gave the arresting officers an alias, which would have prevented them from accessing his mental health history even if they otherwise had the capability to do so. (Def. App. at 29).

detainees were generally at risk for suicide and that several detainees had attempted suicide at the county facility would permit inference of deliberate indifference to a substantial risk of harm). *See generally Farmers*, 511 U.S. at 842-43, 114 S.Ct. at 1981-82 (discussing types of evidence that might support finding actual knowledge based on circumstantial evidence).

Although hindsight might show that the officer's choices were ill-advised, even grossly negligent, the evidence fails to create a genuine issue of material fact on the issue of Deviney's or Ochoa's subjective deliberate indifference to a substantial risk of harm befalling Nunez. The plaintiffs' claims brought pursuant to Section 1983 fail as a matter of law.[3]

### 2.      QUALIFIED IMMUNITY

Deviney and Ochoa also assert that they are entitled to qualified immunity for their discretionary actions. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from the burden of litigation and liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). Applicability of the defense of qualified immunity is a question of law. *Mitchell v. Forsyth*, 472 U. S. 511, 528, 105

---

[3] Nunez's family contends that Defendants have not moved for summary judgment with respect to the complaint that the officers' conduct in placing Nunez in a cell without completing the booking process or monitoring him constituted unconstitutional punishment. Nunez's family argues that this complaint is distinct from the complaint that Defendants acted with deliberate indifference to the suicide risk. A generous review of the pleadings and summary judgment evidence, however, establishes that the plaintiffs' complaints revolve around the circumstances that gave Nunez the opportunity to commit suicide and are not distinguishable or distinct grounds of liability. *See Hare*, 74 F.3d at 638 (noting that incarceration of pretrial detainees generally comports with due process guarantees because of the State's recognized interests in detaining defendants for trial, but exercise of power brings with it responsibility to tend to essentials of their well-being). Plaintiffs' reliance on the Supreme Court's opinion in *Bell v. Wolfish* is also unavailing. *See generally Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *Bell* is limited to cases involving general conditions, practices, rules, and restrictions of confinement during pretrial detention, rather than episodic acts of alleged misconduct by jail officials like those alleged by Nunez's family. *See Hare*, 74 F.3d at 643.

S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In reviewing a defendant's claims of immunity, the court must first determine whether the plaintiff has alleged the violation of a constitutional right. *Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir .2004). If the plaintiff has alleged a constitutional violation, the court must decide if the challenged conduct was objectively reasonable in light of clearly established law at the time that the conduct occurred. *Id*. The defendant's acts are held to be objectively reasonable unless all reasonable officials in the same circumstances would have know that the defendant's conduct violated constitutional law or a federal statute. *Thompson*, 245 F.3d at 459. The qualified immunity defense provides ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

For summary judgment purposes, Deviney and Ochoa concede that Nunez's family has satisfied the first part of the inquiry by alleging the violation of a constitutional right clearly established in 2004. The officers, however, assert that there is no genuine issue of material fact as to the second step in the qualified-immunity analysis. At the second step in the analysis, the court inquires whether the allegedly whether the officers's conduct was objectively reasonable in light of the clearly established constitutional rights of the decedent at the time of the incident. *Hare v. City of Corinth*, 135 F.3d 320, 326-27 (5th Cir. 1998)(commonly referred to as *Hare III*).

In the context of qualified immunity for a pretrial detainee's suicide, litigants and the courts understandably struggle with the relationship between an official's subjective deliberate indifference

and the objective reasonableness of the official's conduct.[4]  *Hare III*, 135 F.3d at 327-28.   In an attempt to clarify the issues, the Fifth Circuit has explained that the subjective deliberate indifference standard serves to demonstrate the clearly established law in effect at the time of the incident, and it is against this minimum standard requiring officials not to be deliberately indifferent that the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable.  *Id.* at 328.  The determination of the objective reasonableness of particular conduct in light of the subjective deliberate indifference standard is a question of law for the court.  *Id.*

In the instant case, there are no genuine issues of material fact that might support the existence of the underlying constitutional violation, i.e., that Deviney or Ochoa knew of a substantial risk that Nunez would harm himself if suicide precautions were not taken.  The facts as presented fail to show that, against the backdrop of the constitutional standard not to be deliberately indifferent, the acts or omissions of the officers were objectively unreasonable as a matter of law.  Accordingly, the individual defendants are entitled to qualified immunity.

3.    MUNICIPAL LIABILITY

Section 1983 does not provide for vicarious liability.  *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Henley v. Edlemon*, 297 F.3d 427, 431 (5th Cir. 2002).  A municipality is liable under 42 U.S.C. § 1983 only when injury results from

---

[4] The Fifth Circuit has emphasized that  entitlement to qualified immunity does not require the individual defendant to show he would also prevail on the merits because that would render qualified immunity an empty doctrine.  *Hare III*, 135 F.3d at 328.  Other courts addressing this issue have recognized that it is difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference, yet conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated clearly established constitutional rights.  *See id.* (citing cases that have recognized this conundrum).

execution of governmental policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Proof of municipal liability sufficient to satisfy *Monell* requires (1) an official policy or custom,[5] (2) of which a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Id* .at 328. The plaintiff in a civil rights action must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably. *Id*. at 406-07, 117 S.Ct. at 1389.

Municipal liability for an episodic act or omission requires proof that the constitutional violation complained of was done with subjective deliberate indifference, and that the predicate act or omission resulted from a municipal custom, rule, or policy adopted or maintained with objective deliberate indifference to the detainee's constitutional rights.[6] *Scott*, 114 F.3d at 54; *Posey*, 430 F.

---

[5] Existence of municipal policy or custom may be established in one of two ways:

1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Pineda*, 291 F.3d at 328.

[6] The failure to promulgate municipal policy may serve as a basis for Section 1983 liability if it was the result of an intentional choice, and not merely an unintentionally negligent oversight. *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir.1993). Liability may also be premised on inadequate training if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact, but the complainant must still prove that the deficient training actually caused the police officers to be deliberately indifferent. *City of Canton*

Supp. 2d at 622. But as already discussed, there are no fact issues with respect to the officers' subjective deliberate indifference and thus no actionable constitutional violation, which obviates the need to address the issue of an unconstitutional municipal custom, rule, or policy. *See Flores*, 124 F.3d at 739.   There are no genuine issues of material fact to preclude summary judgment on the plaintiffs' claims for municipal liability.

4.      SUPPLEMENTAL JURISDICTION

The summary judgment motion makes no reference to the viability of the pendent state claims for wrongful death, which are the only claims remaining in this civil action.  The district court has supplemental jurisdiction over the plaintiffs' state law claims for wrongful death pursuant to Section 1367(a) in Title 28 of the United States Code, but the district court may decline to exercise supplemental jurisdiction over state-law claims if any of the following conditions are met:

**(1)** the claim raises a novel or complex issue of State law,

**(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

**(3)** the district court has dismissed all claims over which it has original jurisdiction, or

**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).  In addition to the statutory factors, the court must also balance the factors of judicial economy, convenience, fairness, and comity.  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002).  Although the general rule is to decline to exercise jurisdiction over pendent state-law claims, that rule is neither mandatory nor absolute.  *Id.* at 446-47.  When the federal claims

_____

*v. Harris*, 489 U.S. 378, 388-89, 391, 109 S.Ct. 1197, 1204-06, 103 L.Ed.2d 412 (1989).

are dismissed from a case that was removed on the basis of a federal question, the court also has discretion to remand remaining state claims to state court as opposed to dismissing those claims without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988).

Having considered the relevant factors, the court will exercise its discretion to remand the Nunez family's state-law claims to state court.

## ORDER

Accordingly, Defendants' Motion for Summary Judgment [doc. 29] is granted. Plaintiffs' state law claims as set out in Cause of Action No. 2, Paragraph 6 of Plaintiff's Amended Complaint, are remanded to the 141st District Court, Tarrant County, Texas.

SIGNED JULY 17, 2007.


/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE